## RUST v. MacLAREN.

District Court, D. Kansas, Third Division.
November 24, 1928.

No. 736.

C. E. Pile and W. W. Brown, both of Parsons, Kan., and W. P. Dillard, of Ft. Scott, Kan., for plaintiff.

John H. Dykes, of Collinsville, Okl., and Robert B. Keenan, of Tulsa, Okl., for defendant.

POLLOCK, District Judge. This case brings before the court this question: Who has the better right to a sum of money now in the hands of defendant as agent of the stockholders of a defunct national bank after all its creditors have been paid and all costs of administering the estate through a receiver appointed by the Comptroller of the Currency, the stockholders of the defunct bank or the plaintiff, who claims to have paid an assessment on shares in the insolvent bank which he did not own, and also to have paid out money employed to discharge the purchase price of shares in the bank purchased by the bank before insolvency?

On issues joined, these claims of the plaintiff and a claim of the defendant interposed by way of a cross-demand or cross-complaint in the case were submitted to a special master to take the proofs, making findings of fact and recommendation as to appropriate decree in the case, the case having been by order of the court transferred from the law to the equity docket. The matter has been heard before the master, and he has taken the proofs, found the facts, and recommended a decree denying all claims of both plaintiff and defendant and dividing the costs. To this report both parties have taken and filed exceptions, which have been briefed, argued, and submitted for decision.

Coming now to a consideration of the exceptions to the report as to the claim of the plaintiff for recovery of the sum of money by him paid out on an assessment of the shares duly and regularly made for the purpose of creating a fund in the hands of the receiver of the bank appointed by the Comptroller of the Currency, it may be said: As the shares stood on the records of the bank in the name of the plaintiff, who by his own acts and conduct recognized his ownership of the same, there can be no question but that, as between the plaintiff and the creditors of the bank who extended credit to the bank on the assumption of plaintiff's ownership of the stock, the assessment was in all respects legal, and, unless plaintiff had paid the same to the receiver of the bank, payment would have been by action of the receiver enforced against him, and this although such assessments are by the law laid only upon owners of shares in a defunct bank. I am of the opinion the plaintiff, by his admission of ownership and by making payment as he did to the receiver of the bank of the assessment, has placed it beyond his power to now question his liability for the same in this matter in which the assessment was made. If his contention is sound, he was not the owner of the shares, he should have contested the assessment on that ground before payment. The findings of the master and his conclusion as to decree on this head are right, and must be approved.

Coming now to the findings and recommendations of the master as to the cross-demand of defendant against plaintiff based upon his alleged negligent acts in the administration of the affairs of the bank in the making of alleged excess loans, and in the making of loans to customers of the bank which proved uncollectible, it must be said: The master has found all such matters, if in point of fact any such ever existed, are now and of right should be disallowed on the ground of laches. They are certainly stale claims, considering the length of time which has elapsed since the acts complained of transpired, and since the affairs of the bank have been fully administered, the creditors all paid, and the costs of administration met, and this is the first time the complaint has been made. In this respect the report of the special master is right, and the exceptions taken thereto are overruled and denied, and the report of the master in this regard is approved and adopted.

There remains to be considered only the exceptions of the plaintiff taken to the report of the special master in denying to the plaintiff a recovery of money by him paid as the

290

purchase price of shares in the bank bought by the officers of the bank for the bank before insolvency. Defendant contends this claim may not be sustained because the bank had no power to purchase or own its own shares, hence it did not become liable, nor is defendant, as agent of the shareholders in the bank, liable for the money paid out by plaintiff for the purchase of the shares, although this may have been done by the plaintiff as by him asserted. The facts in this regard are found by the master from the proofs. That the money claimed by the plaintiff in the sum of $8,077.20 was paid by the plaintiff to the Federal Reserve Bank on a note made as a renewal of an indebtedness contracted with the Commercial National Bank of Independence, this state, in procuring the money necessary to be paid for the shares of the bank purchased from one Ratliff, then the president of the bank, by officers and directors of the bank. The facts in regard to this purchase of stock as found by the master are as follows:

"2. The plaintiff, R. G. Rust, was one of the organizers of the Farmers National Bank of Parsons, Kansas, and was one of the directors of the bank throughout its existence.

"3. In 1922 some of the officers of the bank became dissatisfied with Geo. K. Ratliff, then president of the corporation, because he was in ill health and it was thought he was not giving sufficient attention to the business of the bank to warrant the payment of the salary he was receiving. In order to placate Mr. Ratliff in removing him from his position in the bank it was arranged between W. F. Lay, then cashier, or S. P. Cornelius, then assistant cashier, that the plaintiff, R. G. Rust, one H. H. Smalley, and one H. J. McClain, all directors of the bank, should purchase the 50 shares of stock owned by the president, Geo. K. Ratliff, at $125.00 per share, which they should hold for the benefit of the Farmers National Bank.

"4. Pursuant to this understanding between the officers and directors mentioned, on July 17, 1922, the plaintiff, R. G. Rust, together with H. H. Smalley, and H. J. McClain, made, executed and delivered through the managing officers of the Farmers National Bank to the Commercial National Bank of Independence, Kansas, their joint promissory note in the sum of $7500.00, the proceeds of which were used to purchase the 50 shares of stock in the Farmers National Bank theretofore owned by Geo. K. Ratliff, and 10 shares of such stock theretofore standing in the name of Telia L. Ratliff; and on July 18, 1922, 20 shares of the Ratliff stock were transferred to R. G. Rust,' as evidenced by Certificate No. 134, 20 shares were issued to H. H. Smalley, as evidenced by certificate No. 135, and 20 shares were issued to H. J. McClain, as evidenced by certificate No. 136."

Now, as the facts so found by the master from the proofs taken are not excepted to by defendant, hence they must be regarded as the true facts of the case, the question arises: When shares in a national bank are in fact purchased by or for the bank itself by directors of the bank, to accomplish a purpose of the bank, that is to say, getting rid of an officer of the bank, and the payment to him of a salary out of the funds of the bank, although it may be true the bank may not purchase and hold its own shares, the question is, which has the better right to the money paid out for the accomplishment of such purpose, the party paying the same or the shareholders in the bank taking over the assets remaining after all creditors have been paid?

Now, in this case, had the bank taken the cash to make payment for the shares of stock purchased for it out of the funds of the bank at the time, there is no question but that the assets coming now into the hands of the defendant for the shareholders would, to this extent, have been depleted, and could not have been recovered by the bank or defendant, unless the officials of the bank conducting such transaction had been held liable for the same, fully conceding this premise, yet the bank would act only through its managing officers and directors, of which this plaintiff was one. Knowing the law, he and the other directors making the joint note to borrow the money from the Independence Bank to purchase the shares of Ratliff in the bank for the bank itself, knew the law forming the very existence of the bank itself prohibited the purchase of the stock under the circumstances in which it was purchased. The purchase of the stock by the bank direct being prohibited by the law, its purchase by plaintiff and others indirectly for the bank was also prohibited, and any contract express or thought to be implied from the law as between the bank and the plaintiff, a director of the bank, to accomplish the prohibited purpose, was likewise nonenforceable. Hence, as the plaintiff must disclose the unlawful purpose for which he furnished the credit for the bank when he does disclose the truth of the transaction, he being in pari delicto with the bank and its other officials engaged in the prohibited transaction, he may not recover as against the defendant representing the innocent shareholders to whom

the transaction was both unknown and unauthorized. In National Bank of Xenia v. Stewart, 107 U. S. 676, 2 S. Ct. 778, 27 L. Ed. 592, Mr. Justice Field, delivering the opinion for the court, said:

"While this section in terms prohibits a banking association from making a loan upon the security of shares of its own stock, it imposes no penalty, either upon the bank or borrower, if a loan upon such security be made. If, therefore, the prohibition can be urged against the validity of the transaction by any one except the government, it can only be done before the contract is executed, while the security is still subsisting in the hands of the bank. It can then, if at all, be invoked to restrain or defeat the enforcement of the security. When the contract has been executed, the security sold, and the proceeds applied to the payment of the debt, *the courts will not interfere with the matter. Both bank and borrower are in such case equally the subjects of legal censure, and they will be left by the courts where they have placed themselves.*"

It is further urged there was ample consideration moving to the bank for the making of the purchase of the stock for the bank in getting rid of Ratliff as president and the liability of the bank to pay him $150 per month salary. The trouble with this contention is this: The statute permits a national bank to purchase its own shares on one condition only, namely, "when it shall be necessary to prevent loss upon a debt previously contracted in good faith." This litigation was brought by plaintiff to recover a debt contracted and paid by him in the purchase by a national bank of its own shares in a manner not authorized but prohibited by the law. For this reason, he being in pari delicto in the transaction with the bank and other of its officers, he must fail of recovery.

The exceptions to the report are denied, and a decree will enter as recommended in the report of the master.

It is so ordered.